UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUSAN BURGER BOMBET                               CIVIL ACTION

VERSUS                                            13CV00118-SDD-SCR

DONOVAN, ET AL.

RULING

I.    BACKGROUND

On April 6, 2009, Dr. Leon Bombet took out a reverse mortgage in the amount of $592,500.00 secured by his home[1]. Bank of America is the holder of the mortgage note. RMS serviced the loan as agent for Bank of America. After Dr. Bombet passed away on May 29, 2011, RMS instituted foreclosure proceedings in state court. Mrs. Bombet filed the instant suit for damages for "wrongful foreclosure". While Motions to Dismiss were pending in this case, the parties began to negotiate a settlement. A final settlement agreement was not signed, but Mrs. Bombet contends that an enforceable agreement was reached and she seeks enforcement herein. The terms of the alleged compromise and whether a compromise was reached is disputed.

Beginning on June 17, 2013, the following emails were exchanged between counsel for the parties.

> As we discussed, you will prepared [sic] the documents necessary to consummate the agreement. Please forward the documents upon completion for our review.[2]
>
> Please advise on the status of the itemization of the taxes paid by your client as well as the status of preparing settlement documents.[3]

---

[1] The Mortgage Loan was secured by immovable property located at 17932 Grand Cypress Creek Avenue, Baton Rouge, Louisiana 70810.
[2] Rec. Doc. 59-2, p. 3, Email dated June 17, 2013 from Josh Roy to Ben Dean.
[3] Rec. Doc. 59-2, p. 2, Email dated July 1, 2013 from Josh Roy to Ben Dean.

1

> Please inform your client so that we can move forward with any documents necessary in consummating our settlement agreement to allow Mrs. Bombet to remain in her home.[4]

> Josh,

> Thanks for the update. Hold onto the funds until we get things finalized. I am in the process of drafting a settlement agreement and will need to get approval from my client before I send it to you for review. I have forwarded the proof of insurance to my client. I believe my contact is out of the office until next week. I'll touch base then.[5]

## II.   LAW AND ANALYSIS

### A. An enforceable compromise requires a meeting of the minds as to the specific terms of the compromise.

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[6] A compromise must either be made in writing or recited in open court.[7] However, the form of the compromise is not sacrosanct, and the details of the compromise need not be contained in a single document.[8] A compromise is governed by the same general rules of construction applicable to contracts.[9] The written correspondence between the parties fails to specify the terms of the alleged compromise; therefore, there is no meeting of the minds.

As with any contract, a meeting of the minds or mutual consent of the parties is required.[10] For a valid compromise there must be mutual consent to all of the terms of

---

[4] Rec. Doc. 59-2, p. 7, Email dated July 2, 2013 from Josh Roy to Ben Dean.
[5] Rec. Doc. 59 -2, Exhibit 2, Email dated July 12, 2013 from Ben Dean to Josh Roy.
[6] La. Civ. Code Art. 3071.
[7] La. Civ. Code Art 3072.
[8] *Morrison v. Allstate Ins. Co.,* Civ. A 07-6644, 2009 WL 82557 (E.D. La. 1/12/09) citing *Charhonnet v. Ochsner*, 236 So. 2d 86, 88 (La. App. 4th Cir. 1970), *aff'd*, 258 La. 507, 246 So. 2d 844 (La. 1971).
[9] *Smith v. Walker,* 96-2813 (La. App. 1st Cir. 1998), 708 So. 2d 797, 802, *writ denied*, 98-0757 (La. 5/1/98), 718 So. 2d 418.
[10] *Pat O'Brien's Bar, Inc. v. Franco's Cocktail Products, Inc.,* 615 So. 2d 429 (La. App. 4th Cir. 1993).

2

the agreement.[11] "There can be no binding compromise where the terms of the release from liability are unknown."[12]

Although the party's emails may be indicative of an agreement in principle, the correspondence fails to specify the terms of the alleged compromise.  For instance, in three of the four emails sent, the parties merely discussed preparing the documents necessary to consummate the agreement. However, the terms of the referenced agreement are not memorialized. Without written evidence that there was a meeting of the minds on the specific terms of the agreement, the Court cannot conclude that there is an enforceable compromise agreement.

### B. **RMS did not expressly consent to the terms and conditions of the alleged agreement.**

Louisiana law requires that an agent have express authority to enter into a compromise on behalf of the principal.[13] Thus, for RMS or Bank of America[14] to be bound to any compromise negotiated by counsel, counsel must have express authority. In Louisiana, a written offer or acceptance by counsel, without being signed by the client, is not binding on the client.[15] In this case, counsel for RMS informed Mrs. Bombet's counsel that he was "in the process of drafting a settlement agreement and **will need to get approval from my client [RMS]** before I send it to you [Mrs. Bombet's

---

[11] *Id.*
[12] *Anthony v. Liberty Mut. Ins. Co.,* 759 So.2d 910 (La. App. 3rd Cir. 2000), citing *Townsend v. Square,* 643 So.2d 787 (La. App. 4th Cir. 1994).
[13] La. Civ. Code Art. 2997(5).
[14] RMS is merely a servicing agent for the mortgage. For Bank of America to be bound by the settlement agreement between RMS and Mrs. Bombet, RMS must also have express written authority from Bank of America to enter into a compromise. *See Tedesco v. Gentry Development, Inc.*, 521 So.2d 717 (La. App. 2nd Cir. 1988) (applying common law equal dignity rule by holding that authorization of the agent has a form requirement if the contract the agent enters into has a form requirement.).
[15] *Peltier v. Manuel Builders*, 2007-94 (La. App. 3 Cir. 2/6/08), 976 So. 2d 785, 788-789, citing *Felder v. Georgia Pacific,* 405 So. 2d 521, 523 (La. 1981).

3

counsel] for review."[16] RMS's counsel made it clear that the agreement had to be approved by RMS before acceptance could take place. There is no evidence of RMS' express consent to compromise.

### C. When parties have contemplated a certain form, they are not bound until agreement is executed in that form.

Article 1947 of the Civil Code provides that when "the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." [17] For instance, in *Anthony v. Liberty Mutual Ins. Co.*, the parties exchanged letters detailing the terms of a potential compromise.[18] But, once the settlement documents were received by Anthony, he refused to sign the documents because the Release of All Claims included personal injury claims he did not intend to settle.[19] Liberty Mutual filed a motion to compel Anthony to sign and return the documents. The court held that "[t]he compromise was not complete until the parties signed the formal documentation."[20]  The court reasoned that Liberty Mutual's instructions to Anthony's counsel to "withhold negotiation of the settlement draft until all document are executed" demonstrated that Liberty Mutual did not consider the settlement was final until the documents were signed.

Here, the parties exchanged emails discussing a desire to consummate a settlement agreement. The email exchanges clearly demonstrate both parties intended for formal settlement documentation to be executed. In an email dated June 17, 2013, Mrs. Bombet's counsel stated "you [RMS counsel] will prepared [sic] the documents

---

[16] Rec. Doc. 59 -2, Exhibit 2, Email dated July 12, 2013 from Ben Dean to Josh Roy (emphasis added).
[17] La. Civ. Code Art. 1947.
[18] *Anthony*, 759 So. 2d at 911.
[19] *Id.* at 913.
[20] *Id.* at 914.

necessary to *consummate* the agreement. Please forward the documents upon completion for our review."[21] A similar email was sent on July 2, 2013.[22] Finally, RMS's counsel informed Mrs. Bombet's attorney that "approval from my client" is needed before a draft of the settlement agreement will be sent for review.[23] As evidenced by the email exchange, both parties contemplated formal documents for consummation of the agreement. Like in *Anthony*, RMS did not intend to be bound until formal documentation was executed; thus, the Court cannot conclude there is an enforceable settlement agreement.

### D. A settlement agreement is unenforceable unless signed by both parties.

Article 3072 of the Louisiana Civil Code provides that a compromise must either be made in writing or recited in open court. The Louisiana Supreme Court has interpreted "the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties."[24] Thus, for a compromise under Article 3071 to be valid and enforceable "it must either be recited in open court and capable of being transcribed from the record of the proceeding" or "it must be reduced to writing and signed by the parties or their agents."[25] For instance, in *Sullivan* the court held that

> despite the parties' oral acquiescence to the terms of a settlement and regardless of whether the transcription of the oral discussion of the terms accurately reflected the substance of the negotiations, there could not be an enforceable settlement agreement under Article 3071 until those terms were reduced to a writing signed voluntarily by all parties or their authorized agents or until those terms were recited in open court with the

---

[21] Rec. Doc. 59-2, p. 3.
[22] Rec. Doc. 59-2, p. 7.
[23] Rec. Doc. 59-2, Email dated July 12, 2013 from Ben Dean to Josh Roy.
[24] *Sullivan v. Sullivan*, 95-2122 (La. 4/8/96), 671 So. 2d 315, 317; *Felder v. Georgia Pac. Corp.*, 405 So. 2d 521, 523 (La. 1981); See also, *Desoto v. DeSoto*, 96-1079 (La. App. 5 Cir. 4/29/97), 694 So. 2d 1043, 1045.
[25] *Sullivan,* 671 So. 2d at 317-18.

5

consent of the parties. Until either of these contingencies occurred, the parties were free to withdraw their consent to the oral agreement, because until that point, there is no enforceable agreement.[26]

Assuming Mrs. Bombet's assertion that the terms of the compromise have been reduced to writing through the email correspondence, the compromise would still be invalid and unenforceable because both parties did not sign the alleged compromise.

## III.   CONCLUSION

There is no enforceable settlement agreement between Mrs. Bombet and RMS because there is no meeting of the minds to the terms of the compromise. Additionally, neither party signed the settlement agreement; therefore, there is no enforceable agreement.

Accordingly, Plaintiff's *Motion to Enforce Settlement Agreement*[27] is DENIED.

Signed in Baton Rouge, Louisiana, on March 13, 2014.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[26] I*d.* at 318.
[27] Rec. Doc. 59.