UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUSAN BURGER BOMBET,
INDIVIDUALLY AND IN HER
CAPACITY AS INDEPENDENT
EXECUTRIX OF THE SUCCESSION
OF LEON H. BOMBET

CIVIL ACTION

VERSUS

NO. 13-118-SDD-SCR

SHAUN DONOVAN, IN HIS CAPACITY
AS SECRETARY OF THE UNITED
STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, WORLD
ALLIANCE FINANCIAL CORP., GMFS, LLC,
AND REVERSE MORTGAGE SOLUTIONS

## RULING

This matter is before the Court on the *Motions to Dismiss* filed by the Defendant World Alliance Financial Corp. ("World Alliance")[1] and Defendant GMFS, LLC ("GMFS").[2] Plaintiff Susan Bombet has opposed the motions.[3] Because World Alliance and GMFS move to dismiss on essentially all the same grounds, the Court will address both motions in this opinion.[4] For the reasons which follow, the Court finds that the motions should be granted.

---

[1] Rec. Doc. No. 21.

[2] Rec. Doc. No. 19.

[3] Rec. Doc. Nos. 40 & 39.

[4] The Court may refer to World Alliance and GMFS collectively as "Defendants" in this opinion.

Doc 13017                                    1

I. **Factual Background**

This case arises out of a reverse mortgage executed by Plaintiff's husband Leon Bombet on April 6, 2009. The Housing and Community Development Act of 1987 authorizes the Housing and Urban Development ("HUD") Secretary to insure lenders who provide Home Equity Conversion Mortgages ("HECM"), known colloquially as reverse mortgages, to enable elderly homeowners to reduce "the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets."[5] Generally, a borrower is not required to repay the loan until a triggering event occurs.

Defendant GMFS, LLC ("GMFS") acted as a broker for the reverse mortgage financed by Defendant World Alliance in favor of Leon Bombet. As broker, GMFS was responsible for processing the loan application. World Alliance was not the originator of the loan but was responsible for underwriting and funding the reverse mortgage, providing closing assistance and other functions. Both GMFS and World Alliance are described as lenders on the closing documents.

Under the HECM, HUD does not insure loans where one of the borrowers is under 62. At the time the Bombets applied for a reverse mortgage loan, Plaintiff was not 62 years old and therefore did not meet the eligibility requirements of the program. On April 6, 2009, Plaintiff transferred her interest in their home to her husband Leon Bombet, who was eligible for the loan. On this same date, Leon Bombet executed a reverse mortgage

---

[5] 12 U.S.C. § 1715z-20 (a)(1).

secured by the property located at 17932 Grand Cypress Creek Avenue, Baton Rouge, Louisiana, 70810. Leon Bombet then received a lump sum payment of $100,171.89, and the Bombets continued to reside in this home. The reverse mortgage was assigned to World Alliance and then later assigned to Reverse Mortgage Solutions, Inc. ("RMS"), also a Defendant in this case.

Plaintiff claims that during the loan application process, she and her husband were presented documents by GMFS and World Alliance showing that both Plaintiff and her husband were identified as borrowers. Plaintiff claims she did not know at that time that her name would be removed from the property title as an owner of the home.

GMFS arranged for a HUD-mandated counseling session with Cynthia Ketchens of the Desire Community Housing Corporation. This counseling was conducted via telephone around March 20, 2009. Plaintiff claims she is listed on the Counseling Certificate as a homeowner and that she was treated during the counseling session as though she was also a borrower. Plaintiff claims she was never told during this counseling that her name would be removed from the title or the consequences that could result by not being listed as a homeowner or borrower on the loan. Plaintiff also claims that her signature was forged on the Counseling Certificate by an unknown party.

On May 29, 2011, two years after executing the reverse mortgage, Leon Bombet died testate. Plaintiff was appointed the independent executrix of his succession. Leon Bombet's death constituted a triggering event pursuant to 12 U.S.C. § 1715z-20(j) at which time the reverse mortgage became due. Plaintiff defaulted on the loan, and RMS initiated executory proceedings to foreclose on the mortgaged property on November 28, 2012. Plaintiff filed this lawsuit against World Alliance, GMFS, RMS, and the HUD on February

26, 2013. The motions to dismiss by GMFS and World Alliance are now before the Court in this *Ruling*.

II. **Law and Analysis**

    A. **Motion to Dismiss under Rule 12(b)(6)**

When a court considers a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."[6] "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.' "[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[9] Furthermore, "[a] complaint does not 'suffice if it tenders "naked assertion[s]' devoid of 'further factual enhancement.' "[10]

    B. **The Louisiana Credit Agreement Statute, La. R.S. 6:1121, *et seq.***

The Defendants contend that the Louisiana Credit Agreement Statute expressly

---

[6] *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir.2010).

[7] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir.2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[8] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

[9] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005).

[10] *Wilson v. Kirby Corporation*, 2012 WL 1565415 (E.D. La. 5/1/12), quoting *Ashcroft*, 556 U.S. at 677, 129 S.Ct. at 1949.

prohibits an action against a creditor based on an oral credit agreement. This statute operates as a "statute of frauds" for the credit industry.[11] The purpose of the statute is "to prevent potential borrowers from bringing claims against lenders based on oral agreements."[12]

The Louisiana Credit Agreement Statute, as detailed in Louisiana Revised Statute section 6:1122, *et. seq.*, provides:

> A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

A "creditor" is defined in Louisiana Revised Statute section 6:1121 as "a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor." A "credit agreement" is "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation."[13] Section 6:1123 explicitly states that the following actions "shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of [La.] R.S. 6:1122":

> (1) The rendering of financial or other advice by a creditor to a debtor.
> (2) The consultation by a creditor with a debtor.
> (3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior

---

[11] See *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 469 (5th Cir. 2006) (quoting *King v. Parish Nat'l Bank*, 2004-0337, (La. 10/19/04), 885 So.2d 540, 546).

[12] *Id.* at 469 (quoting *Jesco Constr. Corp. v. Nationsbank Corp.*, 2002-0057 (La. 10/25/02), 830 So.2d 989, 992).

[13] La. R.S. 6:1121.

credit agreement.

Of particular relevance, Louisiana Revised Statute section 6:1124 provides, in pertinent part:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

Plaintiff claims that World Alliance represented to her that she was required to donate her share of the property to obtain financing without explaining to her the consequences of such an action. Specifically, Plaintiff alleges that the counselor never told her that her name would be removed from the title of the property and that she was treated as though she would be a borrower on the loan with her husband. Plaintiff also claims she was advised she could be added as a borrower on the reverse mortgage loan once she reached the age of 62, and that the loan would not become due until after her death.[14] The Defendants contend all of these claims are alleged oral promises relating to the reverse mortgage that are unenforceable under the statute and jurisprudence interpreting same. Furthermore, World Alliance contends it had no written agreement with Plaintiff, and to allow her to maintain her cause of action on these alleged grounds would undermine the legislative intent of the Louisiana Credit Agreement Statute. Both Defendants rely on the Louisiana Supreme Court's decision in *Jesco Construction Corp. v. Nationsbank Corp.*[15]

---

[14] *See* Rec. Doc. No. 8, ¶¶ 24, 31.

[15] 2002-0057 (La. 10/25/02), 830 So.2d 989, 992.

that "all actions (or causes of actions or theories of recovery) based upon an oral agreement to lend money are barred" by the Louisiana Credit Agreement Statute, along with a plethora of subsequent Louisiana state court decisions following suit.[16]

Additionally, World Alliance contends that, under Louisiana law, there is a legal presumption that a party who signs a document knows its contents and cannot avoid its obligations thereto by later arguing that he/she did not read or understand the document, or that another party failed to explain it.[17] World Alliance notes that, in both her original and amended *Complaints*, Plaintiff makes no allegation that she was deceived into donating her property by World Alliance; rather, she alleges that "under confusion and misinformation, she donated her interest in her home."[18] Thus, World Alliance contends Plaintiff cannot rest on the allegation that she did not understand the document she signed or that another contracting party failed to adequately explain it to her.

Plaintiff disputes the Defendants' arguments that her claims should be dismissed under the Louisiana Credit Agreement Statute. Plaintiff relies on *BizCapital Business & Industrial Development Corp. v. Union Planters Corp.*, in which the Louisiana Fourth Circuit Court of Appeal held that "the legislature did not intent to totally immunize banks from all

---

[16] See *Fortenbery v. Hibernia National Bank*, 37,266 (La. App 2 Cir. 8/20/03), 852 So.2d 1221; *Guzzardo-Knight v. Central Progressive Bank*, 99-1449 (La. App. 1 Cir. 6/23/00), 762 So.2d 1243; *King v. Parish National Bank*, 04-0337 (La. 10/19/04), 885 So.2d 540; *Knight v. Magee*, 01-2041 (La. App. 1 Cir. 9/27/02), 835 So.2d 636; and *Woodlands Development LLC v. Regions Bank*, 11-263 (La. App. 5 Cir. 12/28/11), 83 So.3d 147.

[17] See *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012)(citing *Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983)).

[18] Rec. Doc. No. 8, ¶ 30.

legal duties in their relationship with customers and third parties."[19] The *BizCapital* court continued that, "the letter of the law should not lead to the absurd result that a bank should be rewarded for misleading a customer or third party."[20]

Plaintiff claims that World Alliance "used" GMFS to assist it in arranging and making reverse mortgages such that any actions taken by GMFS were undertaken as agents of, or part of, a joint undertaking with World Alliance. Thus, Plaintiff contends that her claims revolve around the fact that the written reverse mortgage document, drafted by GMFS and World Alliance, did not include the protection from spousal displacement provision in violation of federal law, 12 U.S.C. § 1715z-20(j). Plaintiff contends that the following alleged facts bolster her claims against the Defendants under the Louisiana Credit Agreement Statute: (1) World Alliance or its agents assured the Bombets that Plaintiff would be added as a borrower when she reached the age of 62; (2) World Alliance or its agents assured the Bombets that the reverse mortgage would not be due and exigible until after Plaintiff's death; (3) World Alliance or its agents listed Plaintiff as a "homeowner" on the Counseling Certificate and treated her as a borrower; (4) World Alliance or its agents failed to have Plaintiff execute a "Non-Borrower Spouse Ownership Interest Certification Form"; and (5) World Alliance or its agents failed to explain the consequences of removing Plaintiff's name from the title to the property.[21] Plaintiff opines: "It is clear that Mrs. Bombet's complaint meets the plausibility standard because there is hope that the

---

[19] 2003-2208 (La. App. 4 Cir. 9/8/04), 884 So.2d 623, 627.

[20] *Id.*

[21] *See* Rec. Doc. No. 40, p. 9.

discovery process will lead to evidence that will support the claims against World Alliance that it failed to follow federal law and that it made material misrepresentations to the Bombets to gain an unfair advantage over them."[22]

Plaintiff also disputes the contention that she signed the documents at issue. First, Plaintiff states that she was not required to sign the reverse mortgage instrument because the mortgage was executed in favor of her husband alone. As to the Counseling Certificate, Plaintiff contends her signature was forged on this document, and that she was not counseled regarding the issues encompassed in that document. Thus, Plaintiff contends she cannot be presumed to know the contends of documents she did not sign.

Both Defendants submitted *Reply* briefs,[23] and both correctly point out why Plaintiff's reliance on the *BizCapital* case is without merit. Particularly different is that *BizCapital* involved a financial institution suing third party banks for negligent misrepresentation and detrimental reliance based on statements made about the financial status of a debtor. The District Court for the Eastern District of Louisiana made clear in *Bass v. Chase Home Finance* that *BizCapital* has no application to a case where a debtor is suing a bank on an oral agreement to modify a loan.[24] The *Bass* court stated emphatically that "[t]he Louisiana Supreme Court has been clear that the Louisiana Credit Agreement Statute precludes 'all actions' against a creditor absent an agreement in writing."[25] Despite Plaintiff's insistence

---

[22] *Id.*

[23] Rec. Doc. Nos. 48 & 51.

[24] No. 09-3339, 2010 WL 3922709 (E.D. La. Oct. 1, 2010) at * 5.

[25] *Id.*, citing *King*, 885 So.2d at 542; *Jesco*, 830 So.2d at 992.

that there is a written credit agreement that was violated in this case, she acknowledges that she is not a signer on the mortgage at issue. Furthermore, the Court agrees with Defendants that Plaintiff's actual claims, repeatedly referring to what Defendants allegedly "assured" her or "failed to explain" to her, clearly target alleged oral representations and/or misrepresentations by agents of the Defendants. Accordingly, the Court agrees with the *Bass* court's application and interpretation of *Jesco* and finds that Plaintiff has failed to state a claim under the Louisiana Credit Agreement Statute.

### C. Action to Annul Donation

Defendants also argue Plaintiff has failed to state a claim against them to annul the donation of her interest in the home. Plaintiff claims that her donation is a nullity under article 1498 of the Louisiana Civil Code, which provides that "the donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence." However, Defendants argue the alleged donation does not qualify as a donation inter vivos such that it triggers application of article 1498. Article 1468 provides that "[a] donation inter vivos is a contract by which a person ... gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." Defendants contend Plaintiff did not gratuitously divest herself of her property; rather, she donated her interest to her husband to qualify for the reverse mortgage which, if obtained, would provide a homeowner periodic payments or a lump sum payment. As Plaintiff received this lump sump payment in the amount of $100,171.89 as a result of her donation, Defendants contend she did not make a "gratuitous" donation inter vivos divesting herself of all property. Moreover, Plaintiff continued to reside in the home from

1992 until present according to her own admission; thus, Defendants argue Plaintiff did not divest herself of all or substantially all of her assets.

Additionally, Defendants contend that any action to annul a donation is rightfully asserted against the donee and not against third parties. Thus, Defendants argue that any action to nullify the donation must be brought by the Plaintiff against the estate of her husband, and neither Defendant is a proper party to this action under the law. Further, Defendants again cite La. C.C. art. 1498, which advises that if a donee has created a real right by onerous title in the immovable property given to him, then the donation is null for the whole, and the donor may claim the immovable property subject to the real right that has been created. Thus, as Plaintiff's husband executed a reverse mortgage which created a nonpossessory real right over the property, this real right would continue to burden the property whether or not the donation was later annulled.[26]

Plaintiff fails entirely to address or respond to this issue in her *Oppositions*. Plaintiff's failure to offer any argument or jurisprudence to dispute the Defendants' arguments on this issue is fatal to this particular claim. In the Fifth Circuit, arguments not raised in opposition to a motion are waived.[27] Accordingly, Planitiff's claim to annul the donation is dismissed for failure to state a claim upon which relief may be granted.

---

[26] *See* La. C. C. arts. 3278 & 3280.

[27] *See Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 510 (5th Cir. 2005)(citing *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004).

D.  **Claims under the Louisiana Unfair Trade Practices Act ("LUTPA")**[28]

Plaintiff contends the Defendants have violated the LUTPA. Defendants move for dismissal of Plaintiff's LUTPA claims on several grounds. First, both Defendants contend they are entities exempt from LUTPA claims under La. R.S. 51:1406. Second, both Defendants argue alternatively that any LUTPA claims are prescribed. Finally, GMFS contends Plaintiff has no private right of action under LUTPA.[29]

1.  GMFS

GMFS notes that LUTPA has expressly exempted from its coverage "actions or transactions" subject to the supervisory jurisdiction of the Louisiana Commissioner of Financial Institutions.[30] In fact, LUTPA explicitly excludes actions against "any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of ... the financial institutions ... regulators or other states."[31] GMFS contends that, by statute, the Louisiana Commissioner of Financial Institutions has jurisdiction over any actions governed by the Louisiana Residential Mortgage Lending Act, La. R.S. § 6:1081, *et seq.* ("RMLA"). GMFS aruges that, as a registered mortgage loan originator, it qualifies as a mortgage lender under the RMLA and its pertinent definition.[32]

---

[28] La. Rev. Stat.Ann. § 51: 1401, *et seq.*

[29] Because the Court finds that both GMFS and World Alliance are exempt from LUTPA, the Court did not address the alternative arguments made under this statute; however, the Court notes that both alternative arguments in favor of dismissal under LUTPA by Defendants have merit.

[30] La. R.S. § 51:1406(1).

[31] *Id.*

[32] *See* La. R.S. § 6:1083(9) & (10)

The RMLA includes registered mortgage loan originators identified through the Nationwide Mortgage Licensing System and Registry ("NMLS").[33] GMFS has attached an exhibit which shows that it is licensed by the NMLS under NMLS No. 64997, License No. 619.[34] Despite Plaintiff's protestations to the contrary, the Fifth Circuit has held that a court may take judicial notice of governmental websites when considering a motion to dismiss.[35]

GMFS notes that the RMLA regulates many mortgage-related matters, including the "program reverse mortgage loan" offered under or insured by the Federal Housing Administration pursuant to Section 255 of the National Housing Act, 12 U.S.C. § 1715z-20.[36] GMFS contends it is directly involved in the residential mortgage lending activity defined by the RMLA. Additionally, Plaintiff's reverse mortgage loan is governed by the RMLA. Under La. R.S. § 6:1092, the Commissioner has the authority to suspend or revoke any person licensed under the RMLA for any violation of the RMLA, including any person who:

> [m]isrepresents material facts or makes false promises likely to influence,

---

[33] La. R.S. § 6:1083 (16). *See also* La. R.S. § 6:1083 (12): "Nationwide Mortgage Licensing System and Registry", "licensing system", or "NMLS&R" means a mortgage licensing system developed and maintained by the Conference of State Bank Supervisors and the American Association of Residential Mortgage Regulators or successors thereof, for the state licensing and registration of state-licensed mortgage loan originators and the registration of registered loan originators as provided in P.L. 110-289, Title V, as amended, which licensing system includes but not limited to an online database which receives, collects, and stores application, license, enforcement action, and related information on a multi-state basis.

[34] Rec. Doc. No. 20.

[35] *See, e.g., Prison Legal News v. Livingston*, 2010 WL 1610109, at *6 n. 4 (S.D.Tex. Apr.21, 2010) ("The Court may take judicial notice of official ... policies."); *In re Katrina Canal Breaches Consol. Lit.*, 533 F.Supp.2d 615 (E.D.La.2008) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites." (quotation omitted)). This Court may therefore consider the license in deciding the present motion without converting it to a motion for summary judgment.

[36] La. R.S. § 6:1083(14.1).

persuade, or induce an applicant into making a residential mortgage loan or a mortgagor into taking a mortgage loan, or pursues a course of misrepresentation through agents or otherwise;[37] [m]isrepresents or conceals material facts, terms, or conditions of a transaction to which he is a party, pertinent to an applicant for a mortgage loan or a mortgagor;[38] or [k]nowingly engages in any transaction, practice, or course of business which perpetrates a fraud upon any person in connection with the making, purchasing, sale, or brokering of any mortgage loan.[39]

GMFS argues that the allegations of Plaintiff's *Complaints* fall squarely within the provisions set forth above. Specifically, GMFS contends: "In short, Bombet's argument is premised entirely on the notion that Bombet, 'under confusion and misinformation,' was fraudulently taken by mortgage lenders. This type of claim is subject to the supervisory jurisdiction of the Louisiana Commissioner of Financial Institutions."[40] Moreover, Plaintiff's complaint that the mortgage provided by the Defendants failed to comply with federal law in the provided documents, or lack thereof, likewise falls under this supervision according to GMFS.

Plaintiff's opposition to GMFS's argument regarding LUTPA exemption is based on the fact that, at the time of the execution of the Bombets' mortgage, the definition of a residential mortgage loan did not encompass reverse mortgages. Plaintiff contends reverse mortgages were not encompassed by the RMLA until 2010, when the Louisiana Legislature amended the statute to provide for the regulation of reverse mortgages.

---

[37] La. R.S. § 6:1092(A)(8).

[38] La. R.S. § 6:1092(A)(9).

[39] La. R.S. § 6:1092(A)(10).

[40] Rec. Doc. No. 19-1, p. 11.

Because the Act added new rules for the regulation of reverse mortgages to the RMLA, Plaintiff argues the law is substantive in nature and can apply prospectively only since the Legislature did not express an intent to apply the Act both retroactively and prospectively. Thus, because the RMLA did not govern reverse mortgages until after the Bombet reverse mortgages was executed, Plaintiff claims this action or transaction was not subject to the supervisory jurisdiction of the Louisiana Commissioner of Financial Institutions and does not exempt claims against GMFS under LUTPA.

In its *Reply*, GMFS responds that Plaintiff's reliance on the term "reverse mortgage" is misplaced. Rather, because the Louisiana Commissioner of Financial Institutions governs "any person licensed" who fails to comply with the RMLA, it is GMFS's status as a residential mortgage lender and mortgage loan originator, and not the nature of the transaction at issue, which exempts GMFS from the LUTPA. Further, while GMFS acknowledges that "reverse mortgage" was not defined in the RMLA until 2010, GMFS contends that "[t]he RMLA provides a litany of general definitions that fully encompass specific transactions such as reverse mortgages."[41] As such, GMFS argues that many definitions under the RMLA existing at the time of the Bombet mortgage encompassed the more specific transactions of a reverse mortgage before it was specifically defined. In fact, GMFS points to the definition of a residential mortgage loan under La. R.S. 6:1083(21) and contends that a reverse mortgage is defined as a subset to this very provision. Thus, because both GMFS as an institution, and the Bombet mortgage as a transaction, were

---

[41] Rec. Doc. No. 51, p. 6, citing La. R.S. 6:1083(21).

subject to the supervision of the Louisiana Commissioner of Financial Institutions at the time of the mortgage, GMFS is exempt from the LUTPA.

The Court finds that GMFS is exempt from suit under LUTPA. Case law both before and after 2010 shows that residential mortgage lenders and originators are governed by the RMLA and exempt under LUTPA.[42] The fact that the transaction at issue was a reverse mortgage, not specifically defined by the RMLA until 2010, does not change the fact that this transaction, and GMFS, were both under the jurisdiction and supervision of the Louisiana Commissioner of Financial Institutions at all relevant times. Thus, the motion to dismiss LUTPA claims against GMFS is GRANTED.

### 2. World Alliance

World Alliance also claims it is exempt from the LUTPA because "federally insured financial institutions, their subsidiaries and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates, or action or transactions subject to the jurisdiction of ... the financial institutions and insurance regulators of other states" are specifically excluded from LUTPA.[43] As World Alliance is a third tier, wholly owned subsidiary of KBC Bank, NV, subject to the supervision and control of the New York State Bank Department, World Alliance contends it falls under this exemption as a matter of law.

Plaintiff's only argument in opposition to this claim by World Alliance is that World Alliance improperly relies on extrinsic evidence to claim its status as a bank, which Plaintiff

---

[42] See Suffern v. Countrywide Home Loans, Inc., No. 06-0358, 2006 WL 1999204 (E.D. La. July 14, 2006); Oakes v. Countrywide Home Loans, Inc., No. 07-9743, 2012 WL 2327920, at *4 (E.D. La. June 19, 2012);

[43] La. R.S. 51:1406(1).

contends is improper on a motion to dismiss. The Court has already previously addressed its authority to take judicial notice of websites; further, World Alliance points to the corporate disclosure statement filed into the record in this case confirming its status as a subsidiary of KBC Bank, NV, of which the Court may also take judicial notice. Accordingly, the motion to dismiss LUTPA claims against World Alliance is GRANTED.

### E. Wrongful Foreclosure

Finally, both GMFS and World Alliance move to dismiss Plaintiff's claims against them for wrongful foreclosure. Both Defendants contend that co-Defendant RMS, as holder of the note, was the seizing creditor and the party responsible for the foreclosure proceedings. Thus, both GMFS and World Alliance argue that Plaintiff's *Amended Complaint* fails to allege any duty owed to her by GMFS and World Alliance with regard to foreclosure proceedings. GMFS contends it merely took part in the loan application process in 2009; further, it is not even alleged to have ever been a holder of the note.

Plaintiff acknowledges that neither GMFS or World Alliance initiated the foreclosure proceedings; however, Plaintiff contends that both Defendants are to blame for RMS instituting such actions through the violations of federal law and misrepresentations Plaintiff claims these Defendants committed at the time of the origination of the mortgage.

Although there is no statutory cause of action in Louisiana for wrongful seizure, damages for a wrongful seizure of property have long been available under Louisiana's tort law.[44] Because liability is tied to the act of unlawfully seizing another's property, the cause

---

[44] *Mariche v. Wells Fargo Bank, N.A.*, No. 11-1191, 2012 WL 1057626, at *3 (E.D. La. Mar. 28, 2012), citing *Levine v. First Nat'l Bank of Commerce*, No. 02–1114 (La.App. 5th Cir. 4/29/03), 845 So.2d 1189, 1193.

of action arises at the moment of the seizure.[45] "The duty/risk analysis in Louisiana law requires that the plaintiff further show that the wrongful seizure was caused by the fault of one who owed a duty to the plaintiff, and that there was a breach of this duty."[46]

The Court agrees with Defendants that Plaintiff's failure to identify what duty was owed and breached by them to Plaintiff is fatal to her wrongful foreclosure claim. Plaintiff's arguments focus only on a causation theory, one that the Court agrees with Defendants is too attenuated to hold merit under the facts of this case. As both GMFS and World Alliance lacked any authority whatsoever to initiate foreclosure proceedings or seize property of the Plaintiff, the Court finds no support or authority for the proposition that they are the proper defendants in a wrongful foreclosure action.

## III. CONCLUSION

For the reasons set forth above, the *Motions to Dismiss*[47] by GMFS and World Alliance are granted dismissing Plaintiff's claims against them with prejudice. Judgment will not be entered until this case is closed in its entirety.

**IT IS SO ORDERED.**

BATON ROUGE, Louisiana, this 5 day of January, 2015.

*/s/ Shelly D. Dick*
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[45] *Id.*, citing *Edwards v. Turner*, 6 Rob. 382 (La.1844); *Duperon v. Wickle*, 4 Rob. 39, 40 (La.1843).

[46] *Levine*, 845 So.2d at 1193, citing *Dixie Sav. and Loan Ass'n v. Pitre*, 99–154 (La.App. 5th Cir.7/27/99), 751 So.2d 911, 921; *writ denied*, 99–2867 (La.12/10/99), 751 So.2d 855.

[47] Rec. Doc. Nos. 19 & 21.