UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUSAN BURGER BOMBET,
INDIVIDUALLY AND IN HER
CAPACITY AS INDEPENDENT
EXECUTRIX OF THE SUCCESSION
OF LEON H. BOMBET

CIVIL ACTION

VERSUS

NO. 13-118-SDD-SCR

SHAUN DONOVAN, IN HIS CAPACITY
AS SECRETARY OF THE UNITED
STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, WORLD
ALLIANCE FINANCIAL CORP., GMFS, LLC,
AND REVERSE MORTGAGE SOLUTIONS

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by the Defendant Reverse Mortgage Solutions, Inc. ("RMS"). Plaintiff Susan Bombet has opposed the motion.[2] For the reasons which follow, the Court finds that the motion should be granted.

**I.    Factual Background**

This case arises out of a reverse mortgage executed by Plaintiff's husband Leon Bombet on April 6, 2009. The Housing and Community Development Act of 1987 authorizes the Housing and Urban Development ("HUD") Secretary to insure lenders who provide Home Equity Conversion Mortgages ("HECM"), known colloquially as reverse

---

[1] Rec. Doc. No. 28.

[2] Rec. Doc. No. 37.

mortgages, to enable elderly homeowners to reduce "the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets."[3] Generally, a borrower is not required to repay the loan until a triggering event occurs.

Former Defendant GMFS, LLC ("GMFS") acted as a broker for the reverse mortgage financed by Defendant World Alliance in favor of Leon Bombet. As broker, GMFS was responsible for processing the loan application. World Alliance was not the originator of the loan but was responsible for underwriting and funding the reverse mortgage, providing closing assistance and other functions. Both GMFS and World Alliance are described as lenders on the closing documents.

Under the HECM, HUD does not insure loans where one of the borrowers is under 62. At the time the Bombets applied for a reverse mortgage loan, Plaintiff was not 62 years old and therefore did not meet the eligibility requirements of the program. On April 6, 2009, Plaintiff transferred her interest in their home to her husband Leon Bombet, who was eligible for the loan. On this same date, Leon Bombet executed a reverse mortgage secured by the property located at 17932 Grand Cypress Creek Avenue, Baton Rouge, Louisiana, 70810. Leon Bombet then received a lump sum payment of $100,171.89, and the Bombets continued to reside in this home. The reverse mortgage was assigned to World Alliance and then later assigned to Reverse Mortgage Solutions, Inc. ("RMS"), also a Defendant in this case.

---

[3] 12 U.S.C. § 1715z-20 (a)(1).

Plaintiff claims that during the loan application process, she and her husband were presented documents by GMFS and World Alliance showing that both Plaintiff and her husband were identified as borrowers. Plaintiff claims she did not know at that time that her name would be removed from the property title as an owner of the home.

On May 29, 2011, two years after executing the reverse mortgage, Leon Bombet died testate. Plaintiff was appointed the independent executrix of his succession. Leon Bombet's death constituted a triggering event pursuant to 12 U.S.C. § 1715z-20(j) at which time the reverse mortgage became due. Plaintiff defaulted on the loan, and on November 28, 2012, RMS initiated executory proceedings in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, to foreclose on the mortgaged property. Finding that RMS was owed a principal amount of $400,548.93, among other costs, the state district court issued an order authorizing and directing a seizure and sale of the subject property. Plaintiff filed this lawsuit against World Alliance, GMFS, RMS, and the HUD on February 26, 2013. The sole claim against RMS is wrongful foreclosure. The Court has previously granted the *Motions to Dismiss* by GMFS and World Alliance.[4] The motion to dismiss by RMS for both 12(b)(1) lack of subject matter jurisdiction and 12(b)(6) failure to state a claim upon which relief may be granted is now before the Court.

## II.     Law and Analysis

### A.     Motion to Dismiss under Rule 12(b)(1)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the court's subject matter jurisdiction to hear a case.

---

[4] Rec. Doc. No. 69.

Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.[5]

"Given the burden of proof on the party asserting jurisdiction, the plaintiff must submit evidence to prove, by a preponderance of the evidence, that the court does have jurisdiction based on the complaints and evidence."[6] "A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that

---

[5] *Bradley v. Louisiana Air Nat. Guard*, No. 10-0068, 2010 WL 5207593, at *1-2 (E.D. La. Dec. 15, 2010)(quoting *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir.2001) (citing Fed.R.Civ.P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998); *Barrera–Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir.1996); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977); *McDaniel v. U.S.*, 899 F.Supp. 305, 307 (E.D.Tex.1995)); *accord Johnson v. Aramco Servs. Co.*, 164 F. App'x 469, 470 (5th Cir.2006)(internal quotation marks and indentions omitted).

[6] *Id.* at *2, quoting *Smith v. Potter*, No. 09–60901, 2010 WL 4009874, at *2 (5th Cir. Oct. 13, 2010) (emphasis added) (citing *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981)).

establish subject-matter jurisdiction."[7]

   B.   **Lack of Jurisdiction**

RMS contends this Court lacks subject matter jurisdiction because the *Rooker-Feldman* and *Younger* abstention doctrines prohibit this Court from adjudicating Plaintiff's wrongful foreclosure claim against RMS. The *Rooker-Feldman* doctrine "bars lower federal courts from 'exercising appellate jurisdiction over final state-court judgments.'"[8] It applies only in circumstances closely akin to those addressed in the *Rooker* and *Feldman* decisions,[9] in which a party suffered an adverse final judgment rendered by a state's court of last resort, and then initiated proceedings in a lower federal court seeking review and reversal of the state-court judgment.[10] "Accordingly, the doctrine usually applies only when a plaintiff explicitly attacks the validity of a state court's judgment,[11] though it can also apply if the plaintiff's federal claims are so inextricably intertwined with a state judgment that the federal court 'is in essence being called upon to review the state court decision.'"[12]

RMS contends that Plaintiff's wrongful foreclosure claim against it is limited only to

---

[7] *Id.*, quoting *Davis v. U.S.*, 597 F.3d 646, 649 (5th Cir.2009), *cert. denied*, 130 S.Ct. 1906 (2010) (quotation omitted).

[8] *Illinois Cent.R.Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012), quoting *Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

[9] *Id.*, citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521, 161 L.Ed.2d 454 (2005).

[10] *Id.*, citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 466–68, 470–73, 103 S.Ct. 1303, 1306–10, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15, 44 S.Ct. 149, 149–50, 68 L.Ed. 362 (1923).

[11] *Id.* at 391, citing *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011).

[12] *Id.*, quoting *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16; *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350–51 (5th Cir.2003).

the alleged wrongful foreclosure and is not intertwined with any fraud claims against RMS. Thus, RMS contends this claim constitutes a collateral attack on the validity of the foreclosure judgment, specifically prohibited by *Rooker-Feldman* and the cases cited above. RMS also contends the Court should abstain from this claim under *Younger v. Harris*.[13]

Plaintiff's primary opposition is that, for the *Rooker-Feldman* doctrine to apply, there must be a judgment in a state proceeding that a plaintiff in federal court is seeking to overturn, and that an order for sale by executory process is not a judgment in the strict sense of the word.[14] Plaintiff also contends that the mortgage at issue is legally unenforceable as a matter of law because it lacked the required spousal displacement provision mandated by 12 U.S.C. § 1715z-20(j). Thus, because this type of loan is federally regulated and insured by a federal agency, Plaintiff contends the determination of whether this loan violates federal law is a question over which this Court has jurisdiction.

1. Executory Proceedings Constitute a Judgment

The Court finds no merit to Plaintiff's argument that there is no state court "judgment" of foreclosure in this case. Plaintiff challenges the characterization of the executory process and order of seizure as a "judgment." An identical argument was raised by the plaintiffs in *Champagne v. Bank of America, N.A.*.[15] The District Court for the Eastern District of Louisiana rejected this argument and held:

---

[13] 401 U.S. 37 (1971).

[14] *See* Rec. Doc. No. 37, p. 6.

[15] No. 11-2554, 2012 WL 1579488 (E.D. La. May 4, 2012).

> The Court made clear . . . **that it lacks jurisdiction to interfere not only with state court judgments, but also with state court proceedings that implicate important state court interests**. *See Younger v. Harris*, 401 U.S. 37, 54 (1971). Whether the state court's judgment is final, or whether it remains subject to the state appellate process, this Court lacks jurisdiction to review it. *See Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986)("We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to review in the state appellate system."). *See also Spooner v. Gautreaux*, No. 11–30651, 2012 WL 278011 (5th Cir. Jan. 31, 2012)(declining to review state court foreclosure under *Younger*); *Magor v. GMAC Mortg., L.L.C.*, No. 11–50145, 2011 WL 5244949 (5th Cir. Nov. 2, 2011)(declining to review state court foreclosure under *Rooker–Feldman*); *Flores v. Citizens State Bank of Roma, Tex.*, 132 F.3d 1457 (5th Cir.1997)(declining to review state court foreclosure under *Rooker–Feldman*); *United States v. Shepherd*, 23 F.3d 923, 924–25 (5th Cir.1994)(declining to review state court proceeding confirming the validity of allegedly fraudulent foreclosure sale under *Rooker–Feldman*).[16]

The Fifth Circuit has similarly held that "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts."[17] Accordingly, as viewed by the Fifth Circuit and Louisiana federal district courts, the *Rooker-Feldman* doctrine is applicable to the state court's order of seizure and sale. The lack of the word "judgment" in the state court's order is inconsequential under *Rooker-Feldman*.

Turning to the substantive nature of RMS's argument, federal courts have routinely applied the *Rooker-Feldman* doctrine in cases where a plaintiff has sought review of a state court foreclosure judgment. In *Magor v. GMAC Mortgage, L.L.C.*, the Fifth Circuit upheld a lower court's finding that the *Rooker-Feldman* doctrine barred the court from exercising

---

[16] *Id.* at *1 (emphasis added).

[17] *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir.1994)).

subject matter jurisdiction over a suit brought by a plaintiff who sought legal determinations that would allow her to retain possession of her home despite the state foreclosure judgment.[18] The Fifth Circuit held:

> As Magor's present claims arise from the state court proceedings and are "inextricably intertwined" with the state court's judgment—i.e., reversal of the state court's foreclosure judgment would be a necessary part of the relief requested by Magor, and the object of Magor's claims is the state foreclosure judgment itself—the district court lacked subject-matter jurisdiction to review her claims under the *Rooker–Feldman* doctrine.[19]

Very recently, the Fifth Circuit decided *Salinas v. U.S. Bank National Association*[20] in similar fashion. Salinas brought suit challenging the foreclosure of his home, and the district court dismissed his suit for lack of subject matter jurisdiction under *Rooker-Feldman*.[21] Salinas appealed, claiming his suit fell into three exceptions to the *Rooker-Fedlman* doctrine: exceptions based on a void judgment, fraud, and denial of due process.[22] The Fifth Circuit rejected these claims holding:

> The record supports that Salinas initiated the instant federal proceedings to attack collaterally and to seek enjoinment of a preexisting state judgment in a forcible detainer suit and writ of possession rendered in favor of U.S. Bank National Association. Salinas's arguments implicate the validity of the state foreclosure judgment, and he seeks legal determinations that would allow him to retain, or reclaim, possession of his home. Because Salinas's present claims arise from the state court proceedings and are "inextricably intertwined" with the state court's judgment—i.e., reversal of the state court's

---

[18] 456 F. App'x 334, 335-36 (5th Cir. Nov. 2, 2011).

[19] *Id.* at 336, citing *Exxon*, 544 U.S. at 291, 125 S.Ct. 1517; *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir.1995).

[20] — F. App'x —, 2014 WL 6738093 (5th Cir. Dec. 1, 2014).

[21] *Id.*

[22] *Id.*

judgment would be a necessary part of the relief requested by Salinas, and the source of his claims is the state judgment and writ of possession—the district court lacked subject matter jurisdiction to review his claims under the *Rooker–Feldman* doctrine. *See Exxon*, 544 U.S. at 291, 125 S.Ct. 1517; *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir.1995).

Moreover, Salinas's contention that his case presents exceptions to the *Rooker–Feldman* doctrine is without merit. As to his first argument, under some circumstances, a federal court may review the state court record to determine if the judgment is void. *See United States v. Shepherd*, 23 F.3d 923, 925 (5th Cir.1994). A Texas judgment is only void if "the rendering court (1) lacked jurisdiction over the party or his property; (2) lacked jurisdiction over the subject matter of the suit; (3) lacked jurisdiction to enter the particular judgment rendered; or (4) lacked the capacity to act as a court." *Id.* at 925 n. 5. Salinas's complaint, however, is devoid of any factual allegations that the Texas justice court did not have jurisdiction or the proper capacity to act.

Salinas also relies on a fraud exception to the *Rooker–Feldman* doctrine. However, "there is no such thing as a 'fraud exception'" to the *Rooker–Feldman* doctrine. *Truong v. Bank of America, N.A.*, 717 F.3d 377, 384 n. 6 (5th Cir. 2013). Further, Salinas's claims that the state court judgment was procured through fraud are not "independent" and instead are presented for purposes of contesting the parties' rights to foreclose on his property and the implication of those rights for the validity of the state court action. *See id.* at 384 & n. 3. Finally, Salinas's attempt to place his claims within a due process exception fails, as there is no procedural due process exception to the *Rooker–Feldman* doctrine. *Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 350 (5th Cir.2003); *see also Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.1994).[23]

Based on the foregoing, the Court finds that it lacks subject matter jurisdiction over Plaintiff's wrongful foreclosure claim against RMS under the *Rooker-Feldman* doctrine.

### 2. Federal Question Jurisdiction over the Mortgage

Plaintiff has also argued that, because this reverse mortgage is subject to federal regulations, only a federal court has jurisdiction to determine if a violation of the governing

---

[23] *Id.*

regulations renders the mortgage itself invalid.  The Court finds that, while HUD may have violated 12 U.S.C. § 1715z-20(j) when it insured Mr. Bombet's reverse mortgage, this did not render the mortgage contract between Bombet and the predecessor-in-interest to RMS legally unenforceable or invalid.  As the court noted in *Plunkett v. Castro*: "once those loans were consummated, an independent contractual relationship was created between the borrowing spouses and the third party mortgagees."[24]  The *Plunkett* court also noted that the interpretation of the federal regulations "has no impact whatsoever on the contractual relationship between the mortgagee and the mortgagor, and pursuant to the contract between the two, the mortgagee still may choose to foreclose on the non-borrowing surviving spouse."[25]  The Court finds that Plaintiff has failed to show federal question jurisdiction over the mortgage contract in this case.  RMS's *Motion to Dismiss* should be granted.

---

[24] No. 14-cv-326, 2014 WL 4243384 at *13 (D.D.C. Aug. 28, 2014).

[25] *Id.*

### III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[26] by RMS is GRANTED dismissing Plaintiff's claims against RMS with prejudice.[27]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>March 19, 2015</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[26]Rec. Doc. No. 28.

[27] The Court notes that, in the alternative, it would grant RMS's *Motion to Dismiss* under Rule 12(b)(6) for the same reasons set forth in its *Ruling* at Rec. Doc. No. 69.