UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUSAN BURGER BOMBET,
INDIVIDUALLY AND IN HER
CAPACITY AS INDEPENDENT
EXECUTRIX OF THE SUCCESSION
OF LEON H. BOMBET

CIVIL ACTION

VERSUS

NO. 13-118-SDD-SCR

SHAUN DONOVAN, IN HIS CAPACITY
AS SECRETARY OF THE UNITED
STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, WORLD
ALLIANCE FINANCIAL CORP., GMFS, LLC,
AND REVERSE MORTGAGE SOLUTIONS

**RULING**

This matter is before the Court on the *Motion to Dismiss* filed by the Defendant Shaun Donovan, Secretary of the United States Department of Housing and Urban Development ("HUD").[1] Plaintiff Susan Bombet has opposed the motion.[2] For the reasons which follow, the Court finds that the motion should be granted.

The Court adopts the factual background previously presented in this matter. This motion was under consideration by the Court when a case involving similar issues was decided by the United States District Court for the District of Columbia, on remand from the Court of Appeals for the D.C. Circuit, in *Plunkett v. Castro*, No. 14-cv-326, — F.Supp.3d

---

[1] Rec. Doc. No. 38.

[2] Rec. Doc. No. 65.

—, 2014 WL 4243384 (D.D.C., Aug. 28, 2014).[3] The Court ordered the parties to brief the potential applicability of *Plunkett* to the present case. The Court reviewed the parties' briefs and held a status conference with the parties on February 11, 2015, to discuss the status of pending motions in this case.

HUD moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction based on Plaintiff's lack of Article III standing and the argument that Plaintiff's is claim is statutorily time-barred. HUD also moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Because the Court finds that Plaintiff lacks Article III standing in this matter, this argument is the only one that will be addressed in this opinion.

## II.    LAW & ANALYSIS

### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[4] "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[5] The plaintiff bears the burden of demonstrating that subject matter

---

[3] *See also*, No. 14-cv-326, — F.Supp.3d — , 2014 WL 6612945.

[4] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).

[5] *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).

jurisdiction exists.[6]  In ruling on a motion to dismiss for lack of standing, courts must accept as true all material allegations of the Complaint, and must construe the Complaint in favor of the complaining party.[7]

### B. Article III Standing

The Fifth Circuit reviews *de novo* a district court's granting a defendant's motion to dismiss for lack of standing.[8]  Standing is a doctrine of "justiciability that assure[s] federal courts will decide only Article III cases or controversies."[9]  "[T]he issue of standing is one of subject matter jurisdiction."[10]  "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint."[11]

"Article III standing, at its 'irreducible constitutional minimum,' requires Plaintiffs to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely ... be redressed by a favorable decision.'"[12]  "[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[13]  In order to

---

[6] *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 570 F. Supp.2d 851, 853 (E.D. La. 2008), citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).

[7] *Id.*, citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

[8] *Cornerstone Christian Schools v. University Interscholastic Leage*, 563 F.3d 127 (5 th Cir. 2009)(citing *Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566 (5th Cir. 2008)).

[9] *LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005).

[10] *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006).

[11] *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) (internal quotation and citation omitted).

[12] *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

[13] *Id.*

meet the constitutional standard for standing the allegations of injury must not be abstract or speculative.[14]  "[P]articularized ... mean[s] that the injury must affect the plaintiff in a personal and individual way."[15]

HUD concedes that Plaintiff has alleged an injury; however, HUD contends Plaintiff fails to sufficiently plead both causation and redressability required for Article III standing.

      1.    Causation

HUD argues that Plaintiff cannot demonstrate a causal connection between her injury, *i.e.* potential foreclosure/eviction, and the challenged HUD action. HUD contends that it is the mortgage contract that controls when the mortgage becomes due and not the agency's regulations. In this matter, HUD contends that the terms of the reverse mortgage entered into by her husband and private lender GMFS govern the mortgage over the residence in which Plaintiff resides. Plaintiff was not a party to the mortgage because she was ineligible by statute based on her age. Under the clear terms of the contract, the mortgage became due when Mr. Bombet, the sole borrower, died. Because the mortgage set the terms and conditions for when immediate payment became due, HUD contends the mortgage caused the injury of which Plaintiff complains in this Court. HUD is neither a party to the mortgage contract nor a party to the state court foreclosure proceedings. HUD maintains that the actions of private lender RMS in instituting foreclosure/eviction proceedings against Plaintiff in state court cannot be imputed to HUD because the agency's role is limited to that of insurer; thus, HUD did not cause the private party foreclosure action

---

[14] *Id.* at 218 (citing *Lujan* at 2138 n. 2).

[15] *Id.* (citing *Lujan* at 2136 n. 1).

for which Plaintiff seeks redress.

In opposition, Plaintiff claims that causation is clearly shown because:

> had HUD not unilaterally altered the statutory anti-displacement provision (12 U.S.C. § 1715z-2(0j) and issued its unlawful regulation (24 C.F.R. § 206.27(c)), which insures HECMs that protect from displacement surviving borrowers instead of surviving spouses as mandated by 12 U.S.C. § 1715z-20(j), it is reasonable that GMFS and World Alliance would not have executed contracts under these terms, the mortgage on the Bombet's home would not be due and payable until after Mrs. Bombet's death, and Mrs. Bombet would not be facing foreclosure and eviction proceedings.[16]

### 2. Redressability

HUD likewise contends Plaintiff cannot demonstrate redressability because it is not likely that a favorable decision regarding HUD's regulations would affect the private lender's foreclosure efforts, and because HUD has no power to affect the private lender foreclosure. HUD argues that the private lender's waiver of foreclosure is purely speculation and probably unlikely because the lender has no pecuniary interest in withholding foreclosure and extending the mortgage throughout the lifetime of the Plaintiff. HUD contends that the economic expectations of the private lender are appropriate for the Court's consideration on this issue. HUD posits:

> Indeed, extending the mortgage to Plaintiff would result in a highly risky loan much different from the one originally contemplated, particularly due to the great age discrepancy between Plaintiff and her husband. Simply put, the lender has an expectation based on the age of the borrower as to the time frame when, based on life expectancy, the mortgage will become due and the loaned money can be recovered; extending the mortgage to a much younger surviving spouse who is not an obligor under the mortgage changes the economic considerations dramatically.[17]

---

[16] Rec. Doc. No. 65, p. 13.

[17] Rec. Doc. No. 38-1, p. 17.

Moreover, HUD argues that, even if the Court held the regulations at issue invalid, such a ruling would not lead to the redress Plaintiff's claims. HUD contends this would merely mean that HUD should not have insured the mortgage at issue. Such a ruling would not void the insurance, invalidate the mortgage, or alter the terms of the mortgage contract between Plaintiff's husband and the private lender, which would survive as an encumbrance on the property.[18] HUD notes that reverse mortgages "do not need HUD's blessing and can exist without HUD insurance. Nothing in the statute provides that HUD - or even this Court - can invalidate a mortgage insured under the program if it does not contain the protection that Plaintiff now seeks."[19] Thus, because HUD has no power to prevent the private lender RMS from invoking its right to foreclose on Plaintiff's home, HUD maintains that Plaintiff cannot demonstrate redressability.

Further, HUD contends that Plaintiff's request that HUD accept assignment of the mortgage is also untenable. Accepting assignment of insured mortgages is not required by the statute,[20] and, more importantly, the Court cannot order HUD to accept assignment as an alternative to foreclosure. HUD also contends that accepting assignment of this mortgage would conflict with HUD's fiduciary responsibility "to ensure that the mortgage insurance fund 'remains financially sound' due to the riskiness of the loan, Plaintiff's allegations of fraud by the lender, and the mere fact that the mortgage is the subject of

---

[18] *See Id.* at p. 18.

[19] *Id.*at pp. 18-19.

[20] *See* 12 U.S.C. § 1715u(f) which provides that no provision of the Housing Authority Act, or any other law, shall be construed to "require" HUD "to provide an alternative to foreclosure" for lenders with insured mortgages on one-to four-family residences or "to accept assignments of such mortgages."

protracted litigation."[21]

Without providing specifics, Plaintiff claims that a declaratory judgment invalidating HUD's regulation would "likely" redress her injuries. Plaintiff also claims that future similarly situated surviving borrowing spouses will achieve relief through such a declaration. Plaintiff contends that "HUD could accept assignment of the mortgage, pay off its lender, and forestall foreclose [sic] until Plaintiff's death."[22]

**C.    Application**

The Court finds that Plaintiff lacks Article III standing in this matter because she cannot demonstrate redressability based on Mortgagee Letter 2015-03 issued by HUD on January 29, 2015.[23]

In *Bennett et al v. Donovan*, the court ruled that a federal statute[24] allowed HUD to insure only reverse mortgages that came due after the death of both the homeowner-mortgagor and the spouse of that homeowner, regardless of whether that spouse was also a mortgagor.[25] As a result, the court concluded that the federal regulation permitting HUD to insure reverse mortgages like the one involved in this case was invalid because they state that the loan balance would be due and payable in full if the mortgagor

---

[21] *Id.* at p. 20, citing 12 U.S.C. § 1708(a)(3); 24 C.F.R. § 203.353 (requiring lender to certify that there are no claims or offsets against the mortgage during assignment)(incorporated by reference into 24 C.F.R. § 206.107(a)(1)(v)).

[22] Rec. Doc. No. 65, p. 13.

[23] Rec. Doc. No. 79-1.

[24] 12 U.S.C. § 1715z-20(j).

[25] *Bennett v. Donovan*, 4 F.Supp.3d 5, 12-15 (D.D.C. 2013).

died and the property was not the principle residence of at least one surviving mortgagor.[26] Following the court's decision, HUD issued Mortgage Letter 2014–07 and published a Federal Register notice soliciting public comments on this letter which provided that "for loans [initiated after August 4, 2014,], where there is a sole borrower who was married at the time of loan origination (and the spouse was not on the loan), the HECM documents will contain a provision deferring the due and payable status of the loan until the death of the non-borrowing spouse."[27] However, the same court also made clear in the related case of *Plunkett* that, pursuant to the private contract between the mortgagee and mortgagor, the mortgagee may still choose to foreclose on the non-borrower surviving spouse, despite the fact that as a result of Mortgagee Letter 2014–07, HUD will no longer insure contracts that fail to protect a surviving spouse.[28]

Cognizant of the requirement that "an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so,"[29] this Court ordered the parties to brief why, notwithstanding HUD's arguments regarding standing and statute of limitations, Plaintiff was not entitled to the same relief as the parties in *Plunkett* and *Bennett.* HUD's response explaining the relief provided by Mortgagee Letter 2015-03 now satisfies the Court that the Plaintiff has not been treated any differently than those similarly situated.

---

[26] *Id.*

[27] *Plunkett et al. v. Castro*, 2014 WL 4243384, at *3 (D.D.C. Aug. 28, 2014).

[28] *See id.* at *13.

[29] *See Kaiser Foundation Hospitals v. Sebelius*, 828 F.Supp.2d 193, 203 (D.D. Cir. 2011); *Eagle Broad. Grp., Ltd. v. FCC*, 563 F.3d 543, 551 (D.C.Cir. 2009); *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 687 (D.C.Cir. 2005); *Independent Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.D. Cir. 1996).

The January 29, 2015 Mortgagee Letter provides that lenders of all HECM loans with case numbers issued prior to August 4, 2014 (other than the loans in *Plunkett* and *Harris*), have alternative and additional requirements which they can elect in order to obtain claim payment of the FHA insurance. This includes the Bombet loan at issue in this case. Thus, lenders can elect to foreclose as they could previously under the insurance contract pursuant to the terms of the mortgage loan documents, or they can elect, at their sole option, to accept an offer of amendment to their insurance contracts and assign the HECM loans to the FHA. Clearly, Mortgagee Letter 2015-03 makes the Mortgagee Optional Election ("MOE") election available to the mortgagee of the HECM at issue here on the same terms available to all other mortgagees. However, the Mortgagee Letter has imposed timing requirements for the mortgagee relating to the election of the MOE (immediate assignment to HUD). HUD explains: "Even if Plaintiff Bombet (or anyone else) were to obtain a future judgment declaring 24 C.F.R. § 206.27(c)(1) to be invalid as applied to her (or him as the case may be), HUD's regulations as effectively amended by Mortgagee Letter 2015-03 cause foreclosure timelines to be triggered by a mortgagee's elective actions and determinations."[30] Thus, Mortgagee Letter 2015-03 has the legal effect of placing eligible, non-borrowing spouses residing in homes encumbered by pre-August 4, 2014 HECMs and the mortgagees/lenders holding those HECMs in a substantially similar economic situation as eligible, non-borrowing spouses in homes encumbered by post-August 2, 2014 HECMs and their respective mortgagees/lenders.[31]

---

[30] Rec. Doc. No. 79, p. 5.

[31] HUD explains that the Hold Election is not included in the Mortgagee Letter 2015-03 because it would not place the parties in substantially similar economic circumstances; rather, it would place eligible, non-borrowing spouses residing in homes encumbered by pre-August 4, 2012 HECMs and the mortgagees/lenders holding

Based on the foregoing jurisprudence and the application of Mortgagee Letter 2015-03 to the facts of this case, there is nothing that precludes RMS from seeking foreclosure against Plaintiff as the non-borrower surviving spouse. And as HUD has carefully explained, it is not in RMS's pecuniary interests to extend the mortgage under the facts of this case.

Even if the Court followed *Plunkett* and held the regulation invalid, the Court would be required to remand the case back to HUD to fashion some relief consistent with that holding. Not only is the Court is without power to order HUD to provide a particular form of relief, but it appears HUD has preemptively responded to such a situation. Mortgagee Letter 2015-03, in which HUD already addresses the problems raised by Plaintiff, demonstrates that HUD cannot accept assignment of Plaintiff's mortgage. Thus, Plaintiff cannot show redressability sufficient to demonstrate Article III standing.

---

those HECMs in an unintended and substantially better economic position than their counterparts in homes encumbered by post-August 4, 2014 HECMs and the mortgagees/lenders holding those HECMs. Rec. Doc. No. 79, p. 6.

## III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[32] by Defendant Shaun Donovan, Secretary of the United States Department of Housing and Urban Development ("HUD") is GRANTED. Plaintiff's claims against these Defendants are dismissed with prejudice.

The Court will file written reasons for its rulings and will enter a *Judgment* at that time.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>March 19, 2015</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[32] Rec. Doc. No. 38.